UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DISTRIBUTORSOUTLET.COM, LLC,

                  Plaintiff,

       -against-                  **ORDER GRANTING DEFENDANTS'**
                                    **MOTION TO DISMISS WITH LEAVE**
                                    **TO AMEND WITHIN 30 DAYS**

GLASSTREE, INC., GLASSTREE RACING,
LLC, MARCUS ANTHONSEN, CARL            11-CV-6079 (PKC)
BROWN,

                 Defendants.
--------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Plaintiff DistributorsOutlet.com, LLC, an online merchant, brought this action in

December 2011 against: (1) Glasstree, Inc. ("Glasstree"), a web hosting and design company; (2)

Marcus Anthonsen and Carl Brown, Glasstree's two principals; and (3) Glasstree Racing LLC

("Glasstree Racing") (collectively, "Defendants"). Plaintiff alleges that Defendants provided

slipshod and incomplete website design services to Plaintiff and also failed to pay for office

furniture that Glasstree received from Plaintiff. Presently before the Court is Defendants' motion

to dismiss Plaintiff's Second Amended Complaint (Dkt. 54 ("SAC")),[1] which asserts claims for

breach of contract, tortious interference with business opportunity, and unjust enrichment. (Dkt.

58 ("Defs.' Br.").) For the reasons set forth below, the Court GRANTS Defendants' motion to

---

[1] This motion to dismiss was filed only on behalf of Defendants Glasstree Inc., Glasstree
Racing, LLC, and Marcus Anthonsen. Defendant Brown was apparently never served with a
summons and has not made an appearance in this action to date. *See infra* p. 18; Dkt. 14 (July 25,
2012 letter from Defendants' counsel Gregory Berry withdrawing his appearance for Defendant
Brown, noting: "To the best of my knowledge Mr. Brown has never been served a summons in
this case, and I have never spoken or had any contact with Mr. Brown. It was purely through my
own error that I indicated in my notice of appearance that I represented all the defendants.").

dismiss in its entirety, with leave for Plaintiff to amend *only* as to the breach of contract and unjust enrichment claims against Glasstree and Anthonsen.  If an amended Complaint is not filed within thirty (30) days of this Order, Plaintiff's action shall be terminated with prejudice.  Additionally, the Court DENIES Defendants' motion for sanctions and request for oral argument.  (Dkt. 57.)

## BACKGROUND

### A.  Facts Derived From Original Complaint

Plaintiff is an online merchant that sells goods such as electronics, furniture, and clothing under the domain name "www.distributorsoutlet.com," first launched in May 2005.  (Dkt. 1 ("Compl.") ¶¶ 11, 13.)  In or about April 2006, Plaintiff entered into a contract with Glasstree to redesign Plaintiff's website for $5,000.  (*Id.* ¶¶ 14, 16, 17.)  Glasstree thereafter dismantled Plaintiff's website, but failed to complete its redesign by August 2006, as promised.  (*Id.* ¶¶ 15, 18.)  Plaintiff further alleges that Glasstree proceeded to demand an unspecified amount of additional fees from Plaintiff on top of the contract price during the time period in which the website was dismantled.  (*Id.* ¶ 21.)

Although the site was partially restored by September 2006, problems with the site, *e.g.*, missing product pages and malfunctioning back office support for the site, persisted through January 2007.  (*Id.* ¶¶ 22, 23, 24.)  Glasstree never completed its redesign of the website.  (*Id.* ¶ 24.)  Plaintiff also alleges that Glasstree intentionally sold Plaintiff's domain name to another entity and linked Plaintiff's domain name to websites of "questionable and disreputable reputation, thus wrongly impugning the reputation of the plaintiff and adversely affecting the plaintiff's ability to conduct its internet business."  (*Id.* ¶¶ 29, 30.)  Finally, Plaintiff alleges that Glasstree separately contracted to purchase office furniture from Plaintiff for $20,416.34 on July 18, 2006 but failed to pay any portion of the price after Plaintiff delivered the furniture.  (*Id.* ¶¶ 34-39.)

In its original Complaint, Plaintiff asserted four causes of action: (1) breach of the $5,000 website redesign contract, (2) tortious interference with "the business interests of the plaintiff"; (3) breach of the $20,416.34 office furniture contract; and (4) unjust enrichment. Plaintiff sought $10 million for breach of the website redesign contract and tortious interference with business interests, and $20,416.34 for breach of the office furniture contract and unjust enrichment. (*Id.* at ECF 8.[2])

## B. Procedural History

From its inception, this action—now entering its fifth year—has been rife with delays, attributable largely to Plaintiff. Although Plaintiff filed its original Complaint on December 14, 2011, it did not serve any Defendants with a summons until Magistrate Judge Go directed Plaintiff to do so in an April 17, 2012 Order. (Dkt. 2.) Shortly thereafter, confusion over Plaintiff's representation arose. In July 2012, Plaintiff's then-counsel, Joseph Manno, represented to Defendants' counsel that he would be transitioning the case to a new attorney. (Dkt. 13-1.) In an August 28, 2012 letter to Judge Vitaliano, however, Manno revealed that he had been unable to reach his client, Steve Alaimo, the owner of DistributorsOutlet.com, for months—and that he had just learned that the so-called replacement attorney would not, in fact, be taking over, as had previously been agreed. (Dkt. 17.)

On September 19, 2012, Manno formally moved to withdraw from the action, attaching a note from Alaimo firing him. (Dkt. 20.) Judge Go indicated that the motion would be granted once Manno filed an Amended Complaint adding "LLC" to Plaintiff's name to reflect its legal status.[3] (Minute Entry for 10/12/12 Hearing.) Manno filed a First Amended Complaint on October

---

[2] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the documents internal pagination.

[3] Plaintiff had initially filed its original Complaint as "Distributors Outlet.com," and represented itself as a "sole proprietorship" rather than a corporation. (*See* Compl. ¶ 11.)

25, 2012. (Dkt. 23.) On October 12, 2012, Alaimo moved for a court-appointed attorney. (Dkt. 22.) On December 3, 2012, Judge Go granted Manno's motion to withdraw and denied Plaintiff's motion for appointed counsel. (Dkts. 25, 26.) Judge Go set a deadline of December 31, 2012—later extended to January 31, 2013—by which Alaimo was to retain new counsel. (Dkt. 25; 12/27/12 Scheduling Order.) Judge Go further informed Alaimo that corporations may not appear *pro se* and that the case could be discontinued if Plaintiff failed to retain counsel. (Dkt. 25.)

By February 5, 2013, Plaintiff had still not retained counsel. At a hearing on that day, Alaimo represented to Judge Go for the very first time that *he*—and not DistributorsOutlet.com, LLC—was the proper plaintiff in this action. (Minute Entry for 2/5/13 Hearing.) Judge Go permitted Alaimo to file a motion for leave to amend the Complaint and directed that Alaimo "must state in his motion why the amendment he seeks is proper and must provide information and documents supporting his current position that he was the sole party involved in the transactions at issue with the defendants." (*Id.*) Alaimo filed an amended caption page changing Plaintiff's name to "Steve Alaimo of Distributors outlet.com." (Dkt. 35.) In support of this change of party, Alaimo submitted a brief statement pointing out that the name on the credit card used in transactions with Glasstree was "Steve Alaimo" and not "DistributorsOutlet.com LLC." (Dkt. 35.)

On September 30, 2014, Judge Go denied Plaintiff's motion for leave to amend the Complaint to name Alaimo as the plaintiff, and gave Alaimo thirty (30) days from the date of the order to retain counsel. (Dkt. 45.) Plaintiff finally retained new counsel, Simon S. Kogan, on October 25, 2014. (Dkt. 47.) On November 11, 2014, Judge Go granted Plaintiff leave to file a Second Amended Complaint. (Minute Entry for 11/20/2014 Hearing.)

### C. New Allegations In Proposed Second Amended Complaint

On December 4, 2014, Plaintiff shared a Proposed Second Amended Complaint with Defendants. (Dkt. 51-1.) This proposed Complaint made the following substantive changes:

- Revised the sum that Plaintiff was seeking for its first and second causes of action (breach of website redesign contract and tortious interference with a business opportunity) downward, from $10 million to $329,000. (Dkt. 51-1 ¶¶ 27, 35.) Added an allegation that the website earned $3,000 in gross revenue per month. (*Id.* ¶ 14.)

- Revised the third cause of action (breach of the office furniture contract) to assert that Plaintiff was entitled to the fair market value of the furniture, $62,000, rather than the $20,416.34 contract price. (*Id.* ¶ 42.)

- Revised the fourth cause of action (unjust enrichment) to seek damages in the amount of $88,000, without elaboration as to how that number was derived. (*Id.* ¶ 46.)

- Added a common law fraud claim, seeking to recover $16,000 worth of allegedly fraudulent charges made to Plaintiff's American Express card—an allegation made for the first time. (*Id.* ¶¶ 43-45.)

- Added a CAN-SPAM Act claim.[4] (*Id.* ¶¶ 28-30.)

In a December 10, 2014 ruling, Judge Go rejected the new causes of action asserting a CAN-SPAM Act violation and common law fraud, but granted Plaintiff leave to file a Second Amended Complaint ("SAC") that included the other new allegations. (Minute Entry for 12/10/14 Hearing.) Judge Go cautioned, however that "Plaintiff's counsel must make reasonable inquiry

---

[4] To state a claim under the CAN-SPAM Act, 15 U.S.C. § 7701 *et seq.*, a plaintiff must show that the defendant: (1) transmitted commercial electronic mail messages; (2) to a protected computer; and (3) that those messages included header information or subject headings that were materially misleading. *See Yahoo! Inc. v. XYZ Companies*, 872 F. Supp. 2d 300, 304 (S.D.N.Y. 2011). Plaintiff's proposed Second Amended Complaint simply alleges that "[u]pon information and belief, defendant's marketing ef[f]orts on plaintiff's behalf [c]onsisted mostly of spanning e-mails in violation of the CANSPAM Act of 2003." (Dkt. 51-1 ¶¶ 29-30.)

into the viability of the new claims asserted and is warned that he may be subject to sanctions if

any such claim lacks a non-frivolous basis." (Minute Entry for 12/10/2014 Hearing.)[5]

### D. New Allegations In Second Amended Complaint[6]

On December 31, 2014, Plaintiff filed the SAC, which is the version of the Complaint

presently before the Court. (Dkt. 54.) The SAC makes the following substantive changes, in

addition to the new allegations raised in the Proposed SAC:

- Alleges for the first time the existence of two additional contracts with Glasstree relating to the website redesign and maintenance: one for $7,700 and one for $36,667[7] ($16,667 of which was to be paid in cash and the remainder "in trade").[8] (SAC ¶¶ 15-17, 20.)

- Alleges for the first time that Glasstree represented that it would maintain the "distributorsoutlet.com" domain registration for Plaintiff, but failed to renew it in time, allowing it to be purchased by a third party.[9] (SAC ¶¶ 28-30.)

- Alleges for the first time that Defendant Marcus Anthonsen personally guaranteed the contract for office furniture. (SAC Cnt. 3 ¶ 37.)

- Alleges for the first time that Anthonsen informed Plaintiff that Glasstree needed to retain services of certain third parties without disclosing to Plaintiff that he had a relationship with and/or received kickbacks from these third parties. (SAC ¶¶ 18-19.)

---

[5] Judge Go's Order further directed that "Plaintiff's counsel must comply with Local Civil Rule 11.1 in typing and formatting the pleading and must endeavor to correct errors in the name of the plaintiff, and other typographical or numbering errors." (*Id.*) Plaintiff has failed to comply.

[6] Paragraph numbers 31 to 38 in the SAC are repeated twice. To distinguish them, citations to the SAC will specify which count contains the paragraph in question.

[7] In the SAC, Plaintiff writes "$367667," which appears to be a typo. In their motion to dismiss, Defendants refer to the number as "$36,667" and Plaintiff does not object in its opposition.

[8] Plaintiff also alleges for the first time that its web redesign contract with Glasstree was for $10,000 ($5,000 in cash and $5,000 in trade, *i.e.*, in goods), and not $5,000, as Plaintiff previously asserted. (SAC ¶ 15.) However, in contrast to the other new or revised claims in the SAC, this allegation appears to be accurate. *See infra* p. 7.

[9] Elsewhere in the SAC, however, Plaintiff continues to allege that Glasstree intentionally sold the domain name to a third party, as it did in previous Complaints. (SAC Cnt. 2 ¶¶ 35.)

Thus, in the SAC, Plaintiff alleges that Glasstree breached four contracts: three contracts of $10,000, $7,700, and $36,667 for website redesign and maintenance, and a fourth contract of $20,416.34 for office furniture. Plaintiff seeks damages for the website redesign contract breaches and tortious opportunity with business opportunity claim in the amounts of $329,000 each, and for the office furniture contract breach in the amount of $62,000. (SAC at ECF 10.) Plaintiff also seeks $88,000 for the unjust enrichment claim. (*Id.*)

**E. Contracts Identified by Glasstree**

For its part, Glasstree has consistently maintained that it only entered into two contracts with Plaintiff. (*See* Dkt. 15.). Glasstree has attached these two contracts to the Berry Declaration in support of Defendants' motion to dismiss.[10] (Dkt. 59 ("Berry Decl.").)

***July 19, 2006 Contract.*** The first contract, dated July 19, 2006, requires Glasstree to provide, *inter alia*, "High End E-Commerce Site design and set[-]up [to Plaintiff] to be compet[i]tive with surplusalert.com" and "Development, Design, and insertion of 300 to 500 product listings," in exchange for $5,000 in cash and $5,000 in trade ("July 19 Contract"). (Berry Decl. Ex. A.) The contract also provides for a $39 monthly fee and $300 in unspecified "additional fees" to be paid by Plaintiff to Glasstree. (*Id.*) Plaintiff has confirmed that the July 19 Contract is one of the contracts at issue, (Dkt. 61 ("Alaimo Decl.") ¶ 10), and it is ostensibly the same as the contract alleged in paragraph 15 of the SAC, which "called for plaintiff to pay defendant the sum of $10,000, $5,000 of which was to be paid in cash[,] the remainder in trade." (SAC ¶ 15.)

---

[10] On a 12(b)(6) motion to dismiss, a contract integral to the complaint may be considered by the Court, which "need not accept [plaintiff's] description" of the contract, "but may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

***August 2, 2006 Contract.***  The second contract, dated August 2, 2006, requires Defendants to insert 5,000 products into Plaintiff's website ("August 2 Contract").  (Berry Decl. Ex. B.)  That contract provides that Glasstree would bill 416.66 hours total for the job, at a rate of $40 per hour cash and $49 per hour trade, with "product trade at 40% off retail."  (*Id.*)  Thus, the total amount due to Glasstree under the August 2 Contract was $16,666.41 in cash (to be paid in three installments of $5,555.47) and $20,416.34 in trade.  (*Id.*)  Glasstree construes the August 2 Contract to be the same as the website redesign and maintenance contract referenced in paragraph 17 of the SAC, which "called for plaintiff to pay the defendant the sum of [$36,667], $16,667 of which was to be paid in cash and the remainder in trade."  (*See* Defs.' Br. at ECF 10).  Plaintiff does not dispute this representation.

Glasstree asserts that these above two contracts are the only contracts at issue.  Glasstree flatly denies knowledge of a contract for $7,700 relating to website redesign.  Glasstree contends that the $20,416.34 worth of furniture that forms the basis of Plaintiff's Third Cause of Action was "traded as partial payment" for the August 2 Contract and was not part of an independent furniture delivery contract, as Plaintiff alleges in the SAC.  (Defs.' Br. at ECF 13.)  In its opposition, Plaintiff "agrees that part of the furniture delivered to the defendant was in trade," but maintains that "the vast majority of the furniture was ordered above and beyond [what] was called for by the contracts," and that "[D]efendants['] failure to pay for these [additional office furniture] items constitutes a separate and distinct breach of contract."  (Dkt. 63 ("Pl.'s Opp'n") at ECF 8.)

***Terms of Usage.***  Both the July 19 and August 2 Contracts contain a provision that states "[b]y agreeing to this work order you also agree to the complete terms of service located at the following web address"; Glasstree submits a copy of these "Terms of Usage" (Berry Decl. Ex. C.)

**DISCUSSION**

At the outset, the Court admonishes Plaintiff for the careless and haphazard fashion in which it has drafted its pleadings and conducted itself in this litigation. Plaintiff's papers are replete with egregious typographical, grammatical, and formatting errors, and its SAC includes new claims of questionable veracity and accuracy. As is clear from the foregoing background section, even the most basic facts that should be within Plaintiff's knowledge—such as the number of contracts at issue and the parties' respective obligations and performances under those contracts—are either obscured or inconsistent within and among the three different iterations of Plaintiff's Complaints.

As discussed below, the Court dismisses the SAC in its entirety, but, with considerable reluctance, permits Plaintiff to amend its Complaint for a third and final time as to its breach of contract and unjust enrichment claims. However, Plaintiff's claim for tortious interference with business relations, along with all of its claims against Defendants Brown and Glasstree Racing, LLC, are dismissed with prejudice.

**A. Failure To State A Claim**

**1. Breach Of Contract (First and Third Causes of Action)**

To state a claim for breach of contract under New York law,[11] a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Long Beach Rd. Holdings, LLC v. Foremost Ins. Co.*, 75 F. Supp. 3d 575, 587 (E.D.N.Y. 2015) (quoting *Eternity Global Master Fund Ltd. v.*

---

[11] The parties have stipulated that New York law controls. (*See* Defs.' Br. at ECF 11, Pl.'s Opp'n at ECF 17 n.2.) In addition, in a prior opinion, Judge Go has noted that for the purposes of this case, Michigan and New York law are substantially similar so that a choice of law analysis is not necessary. (*See* Dkt. 45 at ECF 18-19.)

*Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).  "Although a plaintiff need not attach a copy of the contract to the complaint or plead the contract's terms verbatim, the complaint must at a minimum set forth the terms of the agreement upon which liability is predicated."  *Trustees of Empire State Carpenters Annuity, Apprenticeship v. Syracuse Floor Sys., Inc.*, No. 13-cv-1509, 2013 WL 7390601, at *3 (E.D.N.Y. Dec. 16, 2013) (citation omitted).  However, "[c]ourts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*."  *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-cv-1534, 2011 WL 5238658, at *7 (E.D.N.Y. Nov. 1, 2011); *Trustees of Empire State Carpenters*, 2013 WL 7390601, at *3.

Here, Plaintiff's allegations are woefully deficient.  For its First Cause of Action, Plaintiff asserts that it entered into a series of three contracts "pursuant to which [Glasstree] was to redesign and maintain [Plaintiff's] e-commerce website."  (SAC ¶ 14.)  According to the SAC, the first contract called for Plaintiff to pay Defendants $10,000 ($5,000 in cash and the remainder in trade); the second for Plaintiff to pay Defendants $7,700; and the third for Plaintiff to pay Defendants $36,667 ($16,667 in cash and the remainder in trade).  (SAC ¶¶ 15-17.)  Plaintiff alleges that Glasstree breached these contracts by failing to restore Plaintiff's website by the agreed-upon date, by failing to complete the redesign, and by failing to renew its domain registration.

But Plaintiff offers no further elaboration on the specific terms of each contract or what terms Glasstree allegedly breached in each contract.  Indeed, because of the vagueness of Plaintiff's allegations, it is not even entirely clear to the Court whether the July 19 and August 2 Contracts submitted by Glasstree are the same two contracts referenced by Plaintiff in its pleadings, though Plaintiff appears to concede that they are.  Plaintiff simply lumps the three contracts together under the broad subject matter of "website redesign and maintenance."  The

Court is also unable to discern from the SAC what the website "redesign" or "maintenance" entailed, the agreed-upon consideration for that "redesign" or "maintenance," and—perhaps most importantly—how the terms of the three contracts differed from one another, and how each contract and which terms within each contract were allegedly breached.[12] "Without pleading the terms of the contract or contracts that [plaintiff] relies upon, his claim fails." *Yanes v. Ocwen Loan Servicing, LLC*, No. 13-cv-2343, 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015) (citing *James v. Countrywide Fin. Corp.,* 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (dismissing a complaint that failed to "specifically identif[y] the contract (or contracts) at issue and . . . the terms of the agreement that defendant purportedly breached"); *Howell v. Am. Airlines, Inc.*, No. 05–cv–3628, 2006 WL 3681144, at *4 (E.D.N.Y. Dec. 11, 2006) (dismissing a complaint that failed to "identify the agreement at issue" or "indicate which terms in that agreement were allegedly breached").

Significantly, Plaintiff also fails to allege whether it, in fact, performed on each contract—*i.e.*, whether it actually paid any part of the $5,000, $7,700, and $16,667 in cash and whether it delivered any part of the $5,000 and $20,000-plus worth of office furniture to Glasstree, as called for under the alleged contracts. This deficiency alone is fatal to the Complaint.[13] *See, e.g., R.H.*

---

[12] The Court notes, for instance, that the August 2 Contract deals neither with website redesign nor maintenance, but with the insertion of 5,000 new product listings into Plaintiff's website; yet, Plaintiff does not reference the terms of this contract in its SAC, let alone allege how Glasstree breached this contract, if at all. Similarly, with respect to Plaintiff's vague allegation that Glasstree failed to complete its redesign by August 2006 and maintain Plaintiff's domain registration as promised, Plaintiff fails to specify in which of the three contracts those terms appear. The Court does not see either of these terms in the July 19 Contract or August 2 Contract submitted by Glasstree. In fact, the Court notes that both contracts specifically state that "[i]t is the client's responsibility to make sure the renewal payments are made before the expiration date of your domain name." (*See* Berry Decl. Ex. A at ECF 3; Berry Decl. Ex. B at ECF 3.)

[13] The Court notes that Alaimo states in a declaration attached to Plaintiff's opposition to Defendants' motion to dismiss that his American Express card was charged $5,555, $7,700, $16,000 and a "monthly charge of $59 for [many] months and other charge[s] that he subcontracted out to other companies" by Glasstree. (Alaimo Decl. ¶ 11.) However, because "it is axiomatic

*Damon & Co., Inc. v. Softkey Software Products, Inc.,* 811 F. Supp. 986, 991 (S.D.N.Y. 1993) ("[W]hen pleading a claim for the breach of an express contract . . . the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract."); *S.O. Textiles Co. v. A & E Products Grp.*, 18 F. Supp. 2d 232, 238-39 (E.D.N.Y. 1998) (dismissing complaint with leave to amend where "plaintiff has failed to allege that it actually performed its obligations under any contract it may have had with [defendant]").

In addition to the three website redesign and maintenance contracts, Plaintiff asserts in its Third Cause of Action that it entered into a fourth contract for the purchase by Glasstree of $62,000 worth of office furniture from Plaintiff for $20,416.34. Glasstree counters that this office furniture contract is the same as the August 2 Contract, which calls for Plaintiff to deliver to Glasstree $20,416.34 worth of office furniture as payment for the insertion of 5,000 product listings. Plaintiff responds that while "part of the furniture delivered to the defendant was in trade . . . the vast majority of the furniture was ordered above and beyond [what] was called for by the contracts," and that "[D]efendants['] failure to pay for these [additional office furniture] items *constitutes a separate and distinct breach of contract*." (Pl.'s Opp'n at ECF 8.) Yet Plaintiff utterly fails to distinguish between how much furniture was delivered as part of its performance on the July 19 and August 2 Contracts, *i.e.*, as payment in trade, and how much furniture was delivered separately from those contracts, supposedly pursuant to some unspecified fourth office furniture contract—the terms of which are nowhere alleged by Plaintiff.

---

that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss," *Weir v. City of New York,* No. 05-cv-9268, 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008) (citation omitted), the Court must disregard the affidavit. *See also Hutson v. Notorious B.I.G., LLC*, No. 14-cv-2307, 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) ("Plaintiff cannot supplement potential gaps in the First Amended Complaint with his extensive declaration."). Accordingly, Plaintiff must amend its SAC to include these factual allegations.

In light of these pleading deficiencies, the Court dismisses both the First and Third Causes of Action. However, the Court grants Plaintiff a final opportunity to amend its SAC to cure the deficiencies in its breach of contract claims. The amended pleading, to be filed within thirty (30) days from the date of this Order, must identify the material terms of each of the three website redesign and maintenance contracts Plaintiff contends is at issue, along with the exact terms that Plaintiff alleges were breached.[14] Plaintiff's allegations must be consistent with the terms of the July 19 and August 2 Contracts.[15] *MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (allegations in the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness). Plaintiff must also add allegations specifying the amounts it has paid Glasstree or furniture it has delivered to Glasstree under each contract and when these payments were made. Finally, if Plaintiff wishes to reassert its Third Cause of Action to allege a breach of an office furniture

---

[14] The Court rejects Defendants' argument that the "Disclaimer of Warranty" provision in the Terms of Usage precludes Plaintiff from asserting *any* breach of contract claims against Glasstree, where the alleged breach is not based on the warranty or representation disclaimed. *Cf. Simone v. Homecheck Real Estate Servs., Inc.*, 42 A.D.3d 518, 521 (N.Y. App. Div. 2007) ("Where the contract specifically disclaims the existence of warranties or representations, a cause of action alleging breach of contract *based on such a warranty or representation cannot be maintained*") (emphasis added) (citation omitted); *Goodman Mfg. Co. L.P. v. Raytheon Co.*, No. 98-cv-2774, 1999 WL 681382, at *13 (S.D.N.Y. Aug. 31, 1999). Here, the terms of the Disclaimer of Warranty provide, *inter alia*, that "the services provided under this agreement are provided on an as is, as available basis," and it disclaims "warranties of any kind, either express or implied, including but not limited to warranties of merchantability or fitness for a particular purpose, or non-infringement, for the services or any equipment Glasstree provides." (Berry Decl. Ex. C at ECF 6.) Putting aside that it is unclear what this disclaimer means with respect to the provision of services rather than goods, the crux of Plaintiff's breach of contract claims appears to be, not that Glasstree breached a particular warranty or representation, but that Glasstree failed to complete a website redesign contract.

[15] If Plaintiff contends that the July 19 and August 2 Contracts submitted by Glasstree are *not*, in fact, the same as the contracts referenced in Paragraphs 15 and 17 of the SAC, Plaintiff's amended Complaint must make that clear.

contract *that is distinct and separate from the July 19 and August 2 Contracts*, Plaintiff must include allegations specifying the material terms of that agreement, the amount of furniture Plaintiff delivered to Glasstree, and how that agreement was allegedly breached.

### 2.  Unjust Enrichment (Fourth Cause of Action)

The Court grants Defendants' motion to dismiss as to the unjust enrichment claim to the extent that it seeks payment for the office furniture delivered as payment in trade under the July 19 or August 2 Contracts, which would be governed under those same contracts. *See Cosmocom, Inc. v. Marconi Commc'ns Int'l Ltd.*, 261 F. Supp. 2d 179, 187 (E.D.N.Y. 2003) ("Under New York law, the existence of an express contract between the plaintiff and [defendants] governing the particular subject matter of its claim for unjust enrichment precludes plaintiff from maintaining a cause of action sounding in quasi-contract against [defendants].") (citation omitted); *accord Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987).

To the extent, however, that Plaintiff seeks to assert an unjust enrichment claim premised on the delivery of furniture *beyond* what was intended as payment in trade under the July 19 and August 2 Contracts, the Court will permit Plaintiff to amend its pleadings to assert such allegations. The Court finds that such allegations would be permissible either as a stand-alone unjust enrichment claim (in the event that Plaintiff does not allege the existence of a separate office furniture contract in its amended pleading) or, if Plaintiff does allege the existence of a separate office furniture contract in its amended pleading, as an alternative theory. *See Perfect Dental, PLLC v. Allstate Ins. Co.,* Nos. 04-cv-0586, 04-cv-0588, 2006 WL 2552171, at *1 (E.D.N.Y. Aug. 31, 2006) ("[W]here there is a bona fide dispute regarding the existence of a contract, plaintiffs may plead a breach of contract claim and an unjust enrichment in the alternative.").

### 3. Tortious Interference with Business Opportunity (Second Cause of Action)

The Court agrees with Defendants that Plaintiff has failed to state a claim for tortious interference with business opportunity. The only two allegations Plaintiff points to in support of this claim are that Glasstree intentionally sold Plaintiff's domain name to another entity and that it "spammed" Plaintiff by linking Plaintiff's domain name to websites of "questionable and disreputable reputation." (SAC Cnt. 2 ¶¶ 35, 36.) Nothing in these allegations or in the rest of the SAC so much as reference a business relationship with a third party, let alone suggest that Glasstree interfered with such a relationship. *See Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (to state a claim for tortious interference with business relations under New York law,[16] the plaintiff must show: "(1) [it] had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship") (citation omitted).

Moreover, even if the claim were cognizable, it is barred by the three-year statute of limitations, which "accrues at the time the injury is sustained, rather than the date of defendant's alleged wrongful act or the date of discovery of the injury by the plaintiff." *Carvel v. Ross*, No. 09-cv-0722, 2011 WL 856283, at *26 (S.D.N.Y. Feb. 16, 2011), *report and recommendation adopted*, No. 09-cv-0722, 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011) (quoting *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, No. 02-cv-6438, 2003 WL 21507529, at *3 (S.D.N.Y.

---

[16] Tortious interference with business opportunity, the formulation used by Plaintiff for its Second Cause of Action, is synonymous with tortious interference with business relations and tortious interference with prospective economic advantage. *Spiegel v. Bekowies*, No. 14-cv-3045, 2015 WL 3429107, at *3 (S.D.N.Y. May 27, 2015) (citing *Valley Lane Industries Co. v. Victoria's Secret Direct Brand Management, L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012) (citation omitted)); *see also Nu-Chem Labs., Inc. v. Dynamic Labs., Inc.*, No. 96-cv-5886, 2001 WL 35981560, at *11 (E.D.N.Y. Mar. 30, 2001) (citation omitted).

June 30, 2003)).  Here, Plaintiff has alleged that Defendants' misconduct occurred between May

2006 and January 2007; however, Plaintiff did not bring this lawsuit until December 2011—nearly

five years later.   Accordingly, Plaintiff's claim for tortious interference with business relations is

dismissed with prejudice.

### 4.  Defendants Marcus Anthonsen and Glasstree Racing, LLC

The Court dismisses Anthonsen and Glasstree Racing as defendants in this action.   Neither

is alleged to be a party to the contracts at issue.   Glasstree Racing is mentioned only in the

paragraph where it is named as a defendant.   Anthonsen is mentioned twice.   First, Plaintiff alleges

that Anthonsen retained the services of certain third parties without disclosing to Plaintiff that

Glasstree had a preexisting relationship with those third parties.  (SAC ¶¶ 18-19.)  Though Plaintiff

is apparently hinting at some sort of "kickback" theory, the Court is unable to discern any

connection between this allegation and any of the causes of action asserted by Plaintiff.

Second, Plaintiff alleges that Anthonsen "personally guaranteed the payment for the

[office] furniture" for Glasstree.  (SAC Cnt. 3 ¶ 37.)   Under New York law, there is a strong

presumption against imposing personal liability on a corporate officer.[17]  *Ainbinder v. Kelleher*,

No. 92-cv-7315, 1997 WL 420279, at *12 (S.D.N.Y. July 25, 1997) *aff'd*, 152 F.3d 917 (2d Cir.

1998) (citing *Lerner v. Amalgamated Clothing & Textile Workers Union,* 938 F.2d 2, 5 (2d Cir.

1991); *Menscher v. Weiss,* N.E.2d 177, 179 (N.Y. 1953)).   A corporate officer or other agent may

be held personally liable for a corporation's obligation only where there is "clear and explicit

---

[17] Though Plaintiff's burden will be high, the Court rejects Defendants' argument that
Anthonsen is insulated from liability by virtue of the "Indemnification" provision in the Terms of
Usage.   That provision provides that under no circumstances would a Glasstree principal be
personally liable to the Customer, here, Plaintiff.  (Berry Decl. Ex. C at ECF 6-7.)  The Court finds
that whether Anthonsen nevertheless willingly and clearly assumed personal liability for the office
furniture payment in spite of this provision is a question of fact to be reserved for summary
judgment or trial.

evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Lanzafame v. Dana Restoration, Inc.*, No. 09-cv-0873, 2010 WL 6267657, at *4 (E.D.N.Y. Aug. 12, 2010), *report and recommendation adopted*, No. 09-CV-0873, 2011 WL 1100111 (E.D.N.Y. Mar. 22, 2011) (citation omitted).

Such a personal guarantee must additionally be supported by consideration to be enforceable, though consideration need not be pled in the complaint. *Thomas H. Lee Equity Fund V, L.P. v. Bennett*, No. 05-cv-9608, 2007 WL 950133, at *2 (S.D.N.Y. Mar. 28, 2007). The Court observes, however, that oftentimes, "consideration received by the primary obligor also serves as consideration for the guarantor." *Id.* ("[W]here one party agrees with another party that, if such party for a consideration performs a certain act [f]or a third person, he will guarantee payment of the consideration by such person, the act specified is impliedly requested by the guarantor to be performed and, when performed, constitutes a consideration for the guarantee."). This is typically true where the guarantee and underlying agreement are executed contemporaneously. *See BAII Banking Corp. v. UPG, Inc.*, No. 86-cv-5544, 1990 WL 160889, at *7 (S.D.N.Y. Oct. 17, 1990).

The Court finds that Plaintiff's conclusory allegation that Anthonsen "personally guaranteed the payment for the [office] furniture" is insufficient to put Anthonsen on notice of the claims against him. (SAC Cnt. 3 ¶ 37.) At the very least, Plaintiff must identify the specific amount guaranteed by Anthonsen and provide the terms of the underlying contract for office furniture that is at issue. The Court notes that Alaimo purports to attach a signed two-line letter to his declaration in opposition to Defendants' motion to dismiss, which reads: "I Marcus Anthonsen promise to pay Steve Alaimo for the furniture that he bought for my company on the day it gets delivered to me." (Alaimo Decl. Ex. B.) Plaintiff, however, must include this as an allegation in its amended pleading. *See Hutson*, 2015 WL 9450623, at *3 ("Plaintiff cannot supplement

potential gaps in the First Amended Complaint with his extensive declaration."). Accordingly, the Court dismisses Anthonsen from this suit but will permit Plaintiff to amend its SAC to include more detailed allegations against Anthonsen in accordance with the above.

### B. Failure to Prosecute (Defendant Carl Brown)

To date, Plaintiff has failed to serve Defendant Carl Brown, despite an order from Judge Go in April 2012 directing Plaintiff to serve all Defendants. (Dkt. 2.). Plaintiff did not cure this deficiency even after Defendants' counsel brought this to the Court's attention back in July 2012. (Dkt. 14). The Court notes, moreover, that Brown is referenced only once in the SAC, as someone that Plaintiff spoke to in April 2006 about redesigning its website. Accordingly, the Court dismisses Plaintiff's claims against Brown for failure to prosecute. *See* Fed. R. Civ. P. 4(m), 41(b); *see also West v. City of New York*, 130 F.R.D. 522, 526 (S.D.N.Y. 1990) (citation omitted); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962).

### C. Venue and Forum Selection Clause

This Court previously denied Defendants' request to dismiss on the basis of improper venue. (*See* 2/2/15 Order.) In their motion to dismiss, however, Defendants raise the new argument that "[b]ringing this suit in New York was a violation of the Contracts" because the Terms of Usage contains a forum selection clause, which provides:

> Customer [DistributorsOutlet.com LLC] consents and agrees that venue shall be in Kalamazoo County, Michigan for any action brought with regard to this Agreement and that the courts in Kalamazoo County, Michigan shall have personal jurisdiction over Customer to the extent that personal jurisdiction may be necessary to enforce any provisions of this Agreement.

(Berry Decl. Ex. C; Defs.' Br. at ECF 28.) Plaintiff counters that this is an improper attempt by Defendants to reargue an issue already decided by the Court. (Pl.'s Opp'n at ECF 24.)

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for W Dist. of Tex.*, 134 S. Ct. 568, 580 (U.S. 2013). Courts in the Second Circuit apply a four-part analysis when determining whether to enforce a forum-selection clause. *Beaubois v. Accolade Constr. Grp., Inc.*, No. 15-cv-05302, 2016 WL 94255, at *2 (S.D.N.Y. Jan. 7, 2016). A forum-selection clause is "presumptively enforceable" if the moving party can demonstrate that: (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the plaintiff's claims. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). If these conditions are satisfied, the clause must be enforced unless the party opposing transfer makes a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid." *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014) (citation omitted). In the *forum non conveniens* context, "forum-selection clauses should control except in unusual cases." *Atl. Marine Const. Co.*, 134 S. Ct. at 581-82 (holding that instead of undertaking the traditional private and public factors *forum non* analysis, "a district court should consider arguments about the public-interest factors only" where there is a forum selection clause).

As neither party has briefed this issue, should Plaintiff amend its SAC within 30 days in accordance with the Court's directions in this Order, the Court will seek additional briefing on whether this case should be dismissed under the doctrine of *forum non conveniens*.[18]

---

[18] The Court additionally notes that it mistakenly relied on case law applying the copyright venue statute in its previous order, (2/2/15 Order (citing *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 365 (S.D.N.Y. 2009)), and now clarifies that 28 U.S.C. § 1391(b), and in particular, (b)(2), is the appropriate provision under which to analyze venue in this case. The Court finds that Section 1391(b)(1) cannot form the basis of venue here, as Defendants all reside or are incorporated in Michigan, and that Section 1391(b)(3) is, by its terms, a "fallback" provision, available only when there is no district in which venue can be found pursuant to subsections (b)(1)

### D. Subject Matter Jurisdiction

Glasstree additionally argues that this case should be dismissed for lack of subject matter jurisdiction, because Plaintiff cannot recover for lost profits and therefore cannot meet the $75,000 amount in controversy necessary for diversity jurisdiction.

The Second Circuit recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted). To overcome this presumption, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). There is a "high bar" for overcoming this presumption. *Id.* "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago,* 93 F.3d 1064, 1070–71 (2d Cir. 1996) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 785 (2d Cir. 1994)). "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir. 1982).

---

or (b)(2). *Daniel v. American Bd. Of Emergency Medicine*, 428 F.3d 408, 434-35 (2d Cir. 2005). To establish proper venue under 28 U.S.C. § 1391(b)(2), a two-part inquiry is appropriate: (1) "a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims; and (2) "the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." *Id.* at 432; *see also id.* at 432 (Section 1391(b)(2) "contemplates that venue can be appropriate in more than one district."). In breach of contract cases, relevant considerations include "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Imagine Sols., LLC v. Med. Software Computer Sys., Inc.*, No. 06-cv-3793, 2007 WL 1888309, at *8 (E.D.N.Y. June 28, 2007). Should Plaintiff amend its SAC within 30 days of this Order, the Court may also seek further briefing or hearing on the issue of venue under this framework.

Glasstree asserts that the breach of the July 19 and August 2 Contracts amounts at most to $47,082.75, the price of the two contracts, (Defs.' Br. at ECF 6), and that Plaintiff cannot prevail on its claim for seven years of lost profit damages.[19]  Under New York law, consequential damages for lost profits are recoverable if a plaintiff can demonstrate with reasonable certainty: (1) the lost profits were caused by the breach; (2) what the amount of the lost profits were; and (3) the liability for the lost profits were "fairly within the contemplation of the parties" at the time the agreement was formed.  *Kenford Co., Inc. v. County of Erie,* 502 N.Y.S.2d 131, 132 (1986).  Whether liability for lost profits was "fairly within the contemplation of the parties" at the time the agreement was formed is a question of fact whose resolution is more appropriate for summary judgment or trial.

Here, Plaintiff has alleged that as a result of Defendants' breach, it lost $3,000 in gross revenue per month while its website was down.  Defendants argue that Plaintiff cannot possibly recover the seven years of lost income it is seeking and that Plaintiff has made no showing it has tried to mitigate damages.  Even so, the Court notes that even ten months of lost profits would amount to $30,000 in damages on top of the $47,082.75 in fees allegedly expended by Plaintiff under the July 19 and August 2 Contracts.  Accordingly, Defendants have not demonstrated to a legal certainty that Plaintiff's lost profits cannot be recovered, and the Court finds dismissal for lack of subject matter jurisdiction to be inappropriate at this stage.[20]  *See Shelton v. Sethna*, No.

---

[19] Although not broken down in the SAC, Glasstree observes that the $329,000 number appears to be comprised of $54,000 (the approximate value of the three alleged contracts) and $275,000 (92 months x $3,000 in revenue per month).  (Defs.' Br. at ECF 18 n.4.)

[20] Glasstree further argues that to recover consequential lost profit damages, Plaintiff was required—and failed—"to plead that the [lost profits] damages were foreseeable and within the contemplation of the parties at the time the contract was made."  *Reads Co., LLC v. Katz*, 900 N.Y.S.2d 131, 133 (App. Div. 2010).  But this type of pleading deficiency can be remedied on amendment, assuming that such an allegation can be made in good faith, and is not a ground to find that the "legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's

10-cv-4128, 2012 WL 1022895, at *4 (S.D.N.Y. Mar. 26, 2012) (finding amount in controversy met where the plaintiff alleged that defendants were aware that the plaintiff's new venture would have reaped $20 million in 60 months when they breached contract at issue); *Liamuiga Tours, Div. of Caribbean Tourism Consultants, Ltd. v. Travel Impressions, Ltd.*, 617 F. Supp. 920, 929 (E.D.N.Y. 1985) ("[W]hile at this time there is little apparent support for the alleged $150,000.00 in actual damages and $300,000.00 in consequential damages, defendant has not shown that there is a legal certainty that plaintiff is not entitled to damages in excess of $10,000.00 for breach of contract."); *Universidad De Las Californias, S.C. v. Mayfair Advisors, Ltd.*, No. 06-cv-5859, 2007 WL 2591228, at *2 (S.D.N.Y. Sept. 7, 2007) (denying motion to dismiss claim for consequential damages because "consequential damages are recoverable if the defendant knows or has reason to know the special circumstances which will give rise to such damages") (citation omitted).

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS Defendants' motion to dismiss under Rule 12(b)(6), with leave to amend within thirty (30) days in accordance with this decision. Specifically, to sustain its breach of contract and unjust enrichment claims against Glasstree, Plaintiff must allege: (1) the terms of each contract in dispute, along with how Glasstree allegedly breached those terms; (2) the specific amounts it has paid Glasstree in connection with each contract, distinguishing between payments in cash and payments in trade; and (3) the contract price for the office furniture it delivered to Glasstree beyond any deliveries made as payment in trade. In addition, to maintain its claims against Anthonsen, Plaintiff must include allegations as to the amount(s) personally guaranteed by Anthonsen, when and how that guarantee was made, and the

---

good faith in asserting the claim." *Chase*, 93 F.3d at 1070–71. Rather, the Court merely instructs Plaintiff to include such an allegation in its amended pleading.

terms of the alleged underlying contract(s). To adequately plead a claim for consequential damages, Plaintiff must include an allegation that lost profits were foreseeable and within the contemplation of the parties at the time the website contract was entered into. Plaintiff is *not* permitted to add any new claims to any amended Complaint, but will only clarify, as instructed in this opinion, or withdraw, the existing claims in its Second Amended Complaint that have not been dismissed with prejudice.

Finally, the Court DENIES Defendants' motion for Rule 11 sanctions, but strenuously cautions Plaintiff that it is dangerously close to being sanctioned based on a clear pattern of irresponsible pleading practices that border on bad faith, and that, if at any time, it appears to the Court that Plaintiff has no good faith basis for its allegations, the Court will not hesitate to impose sanctions. Moreover, Plaintiff's counsel is advised to confirm the veracity and accuracy, as well as proof-read, all future submissions to this Court, and to conform its next pleading to the formatting requirements of Local Civil Rule 11.1.

SO ORDERED:

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2016
         Brooklyn, New York